IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DANIEL CLARK AND CHASTITY CLARK,       §
                                       §
           Plaintiffs                  §
                                       §
VS.                                    §   CIVIL ACTION H-09-3924
                                       §
FEDERAL DEPOSIT INSURANCE              §
CORPORATION, AS RECEIVER FOR           §
WASHINGTON MUTUAL BANK SERVICING       §
AGENT AND WASHINGTON MUTUAL            §
BANK, FA, and JPMORGAN CHASE           §
BANK,                                  §
                                       §
           Defendants.                 §

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Pending before the Court in the above referenced action, removed from the 61ˢᵗ Judicial District Court in Harris County, Texas,[1] seeking to void and set aside a wrongful foreclosure and to quiet title, are several motions: (1) a motion to dismiss for lack of subject matter jurisdiction, based on Daniel Clark and Chastity Clark's ("Plaintiffs'" or "the Clarks'") failure to exhaust administrative remedies, pursuant to Federal Rule of Civil Procedure 12(b)(1), and alternatively, motion for summary judgment

---

[1] On October 16, 2009 the FDIC was substituted in as Receiver for insolvent Defendants Washington Mutual Bank Servicing Agent and Washington Mutual Bank, F.A. (collectively, "WaMu").  Under the Financial Reform Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1819 (providing federal courts with jurisdiction over suits in which FDIC is a party except when the FDIC is appointed exclusively by state authorities and the case involves certain types of state law claims), and 28 U.S.C. § 1441, the FDIC timely removed this case on December 4, 2009, within ninety days of that substitution, as required by § 1819(b)(2)(B).

pursuant to Federal Rule of Civil Procedure 56 (instrument #20), filed by Defendant Federal Deposit Insurance Corporation in its capacity as Receiver for WaMu ("FDIC"); (2) Defendant JPMorgan Chase Bank, N.A. ("JPMC's") motion for summary judgment (#21); and (3) FDIC's motion to strike (#30).

## I.   Standards of Review

### Rule 12(b)(1)

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.  The parties asserting that subject matter exists, here Plaintiffs, must bear the burden of proof for a 12(b)(1) motion.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned.  *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez*

*v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 199 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, as is the case here, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*. The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson*, 2008 WL 4692392 at *10, *citing Garcia*, 104 F.3d at 1261. In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[2]

_____

[2] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"  *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Because federal courts are courts of limited jurisdiction, they have the power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); *Punzalan v. FDIC*, 633 F. Supp. 2d 406, 411 (W.D. Tex. 2009).  As recently stated by the Fifth Circuit, § 1819(b)(2)(a) of FIRREA proclaims that

> all suits to which the FDIC is a party and all component claims in those suits are "*conclusively* presumed to arise under the laws of the United States and thus . . . within the original subject matter jurisdiction of the proper federal district court."  Because a suit and all its component claims are conclusively deemed to arise under

---

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached."  [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).]  "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations.  *Id.*  To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties.  *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).  The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction."  *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

> federal law once the FDIC is a party, § 1819(b)(2)
> provides jurisdiction over suits whose causes of action
> may otherwise largely depend on state law and which may
> not otherwise be subject to federal-question jurisdiction
> under the general federal-question statute of 28 U.S.C.
> § 1331. Ultimately, in enacting FIRREA, "Congress used
> very strong language to afford the FDIC every possibility
> of having a federal forum within the limits of Article
> III."

*Adair v. Lease Partners, Inc.*, 587 F.3d 238, 241-42 (5th Cir. 2009),

*cert. denied*, 130 S. Ct. 3326 (2010).

Moreover, if Congress establishes an exhaustion requirement for

a statute, the courts must enforce its express terms. *Coit*

*Independence Joint Benture v. FSLIC*, 489 U.S. 561, 579 (1989). In

*Meliezer v. RTC*, 952 F.2d 879 (5th Cir. 1992), the Fifth Circuit

held that in 12 U.S.C. § 1821(d)(13)(D) Congress established an

exhaustion requirement for claims under FIRREA.[3] That provision

states,

> (D) Limitation on judicial review
>
> > Except as otherwise provided in this
> > subsection, no court shall have jurisdiction
> > over--
> >
> > (i) any claim or action for payment from, or an

---

[3] "Although FIRREA does not explicitly mandate exhaustion of remedies before judicial remedies, the language of the statute and indicated congressional intent make clear that such is required." *FDIC v. Scott*, 125 F.3d 254, 258 (5th Cir. 1997). "Other circuits have uniformly held that in § 1821(d)(13)(D), Congress established an administrative exhaustion requirement; before a litigant may bring a claim in court against the receiver, the FDIC must first administratively deny the claimant relief." *Id.* at 257 (and cases cited therein).

To invoke the administrative claims procedure as to pre-receivership claims, the FDIC must both publish and mail notice to creditors and claimants of the failed depository institution, instructing them to present their proofs of claim timely to the FDIC. 12 U.S.C. § 1821(d)(3)(C)(i)-(ii).

action seeking a determination of rights with
respect to, the assets of any depository
institution for which the [FDIC] has been
appointed receiver, including assets which the
[FDIC] may acquire from itself as such
receiver; or

(ii) any claim relating to any act or omission
of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). "Except as otherwise provided" refers

partially to § 1821(d)(6)(A), which provides [as the only exception]

to courts jurisdiction to hear suits on claims after the receiver

either disallows the claim or allows its 180-day review period to

elapse." *First City Asset Servicing Co. v. FDIC*, 158 B.R. 78, 80

(Bkrptcy N.D. Tex. 1993), *citing Rosa v. Resolution Trust Corp.*, 938

F.2d 383, 391-92 (3d Cir. 1991), *cert. denied*, 502 U.S. 981 (1991).


In *First City Asset Servicing Co. v. FDIC*, 158 B.R. 78, 80

(Bkrtcy N.D. Tex. 1993), the bankruptcy judge quoted the summary

description of FIRREA's statutory exhaustion framework in *Lloyd v.*

*FDIC*, 812 F. Supp. 293, 297 (D.R.I. 1993):

Under this [FIRREA] procedure, those with claims
against either a seized depository institution or its
receiver must first present their claims to the receiver,
who decides the disputes according to the procedures
contained in the statute. § 1821(d)(3)-(10). The
receiver has 180 days in which to make a determination on
the claim, then the claimant has 60 days after notice of
the disallowance either to request an administrative
review or to commence a *de novo* action in the appropriate
federal district court. § 1821(d)(6)(A). If the
receiver fails to give notice of disallowance within the
claim determination period, then the claimant has 60 days
from the end of that period to request an administrative
review or file suit in the appropriate federal court.

-6-

*Id.*  If the claimant fails to do either, he loses all rights with respect to that claim.  § 1821(d)(6)(B).

The administrative exhaustion requirement applies to all claimants, including those who filed suit against a financial institution prior to the appointment of a Receiver.  *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 955 (5th Cir. 1994)("FIRREA makes participation in the administrative claim review mandatory, regardless of whether the claims were filed before of after the [Receiver] was appointed receiver of the failed institution.").[4]

**Rule 56**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 317, 323 (1986).  The substantive law governing the claims identifies the essential elements and thus indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an

---

[4] The Court notes that administrative claim process includes 12 U.S.C. §§ 1821(d)(5)(ii) and (12)(A)(ii), discussed in detail subsequently.

essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993). Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d

-8-

1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269
(5th Cir. 2002).   Nor are pleadings competent summary judgment
evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80
F.3d 1042, 1045 (5th Cir. 1996).

## II.  Relevant Substantive Texas State Law

Under Texas law the elements of claim of wrongful disclosure
are (1) a defect in the foreclosure sale proceedings, (2) a grossly
inadequate selling price, and (3) a causal connection between the
defect and the grossly inadequate selling price. *Sauceda v. GMAC
Mortgage Corp.*, 268 S.W. 3d 135, 139 (Tex. App.--Corpus Christi
2008), *citing  Charter Nat'l Bank-Houston v. Stevens*, 781 S.W. 2d
368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied); *In re
Keener*, 268 B.R. 912, 921 (N.D. Tex. 2001)(there must be evidence
of an irregularity that "must have caused or contributed to cause
the property to be sold for a grossly inadequate price").   The
plaintiff challenging a foreclosure sale must plead and ultimately
prove any irregularities that rendered the sale invalid." *Sauceda*,
268 S.W. 3d at 139.

To effect a valid foreclosure, the holder of a defaulted note
must give notice of intent to accelerate with demand for payment and
time to cure, notice of acceleration, and notice of foreclosure sale
at least 21 days before the sale and notice of default at least
twenty days before notice of sale.   Tex. Prop. Code § 51.002(b);
*Ogden v. Gibralter Sav. Ass'n*, 640 S.W. 2d 232, 233 (Tex. 1982).

Specifically Texas Property Code Ann. § 51.002 provides in relevant part,

> (b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
>
> > (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
> >
> > (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
> >
> > (3) written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.
>
> (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). . . .
>
> (e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

### III.  Plaintiffs' Allegations

Plaintiffs are husband and wife. Plaintiffs' First Amended Petition To Quiet Title and Suit for Wrongful Foreclosure (copy is Exh. A to #21) states that on September 7, 2007 they entered into

an Adjusted Rate Promissory Note in the amount of $841,500.00 with Washington Mutual Bank, FA relating to their Property located at 8726 Ferris Drive Houston Texas. #21 (JPMC's Motion for Summary Judgment), Exh. 1, SJ Evid. 14-20.   To secure the Note, they executed a Deed of Trust in favor of Washington Mutual Bank, FA (*Id.*, Ex. 2, S.J. Evid. 21-33).

During 2007 Plaintiffs overpaid property taxes on that property by approximately $18,000.00, but were not given credit for that amount by Defendants.

Moreover, during the same time and continuing into the next year, they hired Cliquescean Green ("Green") to pay their monthly bills, including payments on the Promissory Note, and transferred funds to him each month for that purpose.  In 2008 they discovered that Green had been embezzling funds from them and may not have paid the monthly amount due on the mortgage.

Regardless, they claim that Defendants wrongfully foreclosed on their property because Defendants failed to give a 20-day Notice of Acceleration of the Note, as required by Texas Property Code § 51.002(d) to allow them to cure the default under the Deed of Trust, nor did Defendants give a 21-day Notice of Foreclosure subsequent to any notice of acceleration and before the earliest time when the sale would begin in foreclosure of the property, as required by Texas Property Code § 51.002(b).  On August 5, 2008 their property was sold at a substitute trustee's sale without notice to the

Clarks.

Plaintiffs assert that their property has an approximate fair market value of $1.1 million, with the outstanding balance of the note being approximately $840,000.00. Thus they claim an equity interest in excess of $250,000.00, at risk because of the alleged wrongful foreclosure.

Plaintiffs state that the first notice they received that any of the payments was purportedly not made was in a Citation of Eviction (Exh. 4), informing them that a hearing was set for September 26, 2008. On September 23, 2008 Plaintiffs filed their Original Petition, and they were granted a temporary restraining order to prevent Defendants from attempting to obtain possession of the premises or proceed with the sale of the Property. On September 25, 2008 FDIC placed WaMu in receivership. Between then and January 2009, Plaintiffs' attorney reached several agreements with Scott Stilman, in-house counsel for Washington Mutual in California, to extend the deadline for filing Defendants' answer to the suit because of ongoing settlement negotiations. Stilman never informed Plaintiffs or their counsel that the Note and the substitute trustee's deed had been transferred to JPMorgan Chase, which had purchased Defendants' deposits, including Plaintiffs' Note, Deed of Trust, and title to the Property.

Plaintiffs further allege that FDIC never provided notice of the claims procedure to Chastity Clark as required under 12 U.S.C.

§ 1821, nor personal notice of the claims procedure to Daniel Clark, but instead forwarded notice of the claims procedure (Exh. 4) to Daniel Clark's attorney on January 22, 2009, after the deadline for filing claims had passed.  They represent that because  their attorney believed that this action had been filed before FDIC was appointed receiver and because it had not requested a stay of this action within 90 days of that appointment, he continued to prosecute this suit.

After Plaintiffs filed a motion for default judgment, on May 14, 2009 FDIC filed an answer and plea in jurisdiction, arguing that Plaintiffs had failed to exhaust the administrative claims procedure and were therefore barred from proceeding with the suit.

Meanwhile Plaintiffs did not file a proof of claim in this action because they had filed it before appointment of a receiver and the receiver had not requested a stay within 90 days of that appointment.  After conferring with Defendants' attorney, Plaintiffs' counsel filed a Proof of Claim (Exh. 5) on May 15, 2009. The FDIC disallowed the claim (Exh. 6) based on untimeliness even though Chastity Clark had never received notice and Daniel Clark had never received personal notice.

Plaintiffs assert wrongful foreclosure based on violations of Texas Property Code § 51.002(d) and § 51.002(b).

At the close of the Amended Petition is a Petition and Trespass to Try Title, asserting that Plaintiffs are entitled to

possession and ownership of  the Property and seeking to quiet title.  They also appeal FDIC's disallowance of their claim under 12 U.S.C. § 1821(d)(6)(A) on the grounds that Chastity Clark never received notice of the claims procedure and Daniel Clark never received personal notice of the claims procedure.  FDIC published notice only in the *Wall Street Journal*, but not in any other paper, including one in Harris County, Texas, and there is no evidence that the notice was republished one month and two months after the initial publication, in violation of 12 U.S.C. § 1821(d)(3)(B) and (C), making FDIC's disallowance improper.  Finally, Plaintiffs seek reasonable and necessary attorneys' fees under the Texas Civil Practice and Remedies Code § 37.009 and 38.001.

### IV.  FDIC's Motion to Dismiss or for Summary Judgment (#20)

FDIC moves to dismiss for lack of subject matter jurisdiction because Plaintiffs have failed to exhaust the mandatory administrative claims process in 12 U.S.C. § 1821(d)(13)(D).  With supporting documents and affidavits from attorney Kirk Schwartz, custodian of records for Brown & Shapiro, and from Peter Barter, Claims Agent of the FDIC, attached to the motion, FDIC chronicles the history of the loan and mortgage given to the Clarks and the numerous notices it or WaMu sent to them at the Property's address. Included in the latter are the following: (1) on March 20, 2008 WaMu's Collections Department sent a Notice of Intent to Accelerate and Demand for Payment to Daniel Clark, at the Property's address

(Schwarz Aff. ¶ 4, Ex. 1, #20, Ex. A); (2) on May 29, 2008 WaMu's counsel, Brown & Shapiro, LLP sent Daniel Clark at the Property's address notice that WaMu had retained counsel to collect a past due debt and institute foreclosure proceedings under the Loan Documents (Schwarz Aff., ¶ 5 and Exh. 2); (3) on May 29, 2008 WaMu's counsel sent Chastity Clark at the Property's address notice that WaMu had retained counsel to collect a past due debt and institute foreclosure proceedings under the Loan Documents (Schwarz Aff., ¶6, Exh. 3); (4) on June 9, 2008 WaMu's counsel sent to Daniel Clark at the Property's address a Notice of Acceleration and Posting regarding the Property along with a Notice of Trustee's Sale, informing him that the foreclosure sale was on July 1, 2008, starting no earlier than 12:30 p.m. (Schwartz Aff., ¶ 7 and Exh. 4); (5) on June 9, 2008 WaMu's counsel sent to Chastity Clark  at the Property's address a Notice of Acceleration and Posting regarding the Property, along with a Notice of Trustee's Sale informing her that the foreclosure sale was on July 1, 2008, starting no earlier than 12:30 p.m. (Schwartz Aff., ¶ 8 and Exh. 5); (6) changing the date of the foreclosure sale, on July 14, 2008 WaMu's counsel sent Daniel Clark at the Property's address a second Notice of Acceleration and Posting, along with a new Notice of Trustee's sale informing him that the foreclosure sale was on August 5, 2008, starting no earlier than 12:30 p.m. (Schwartz Aff. ¶ 9 and Exh. 6); and (7) on July 14, 2008 WaMu's counsel sent Chastity Clark at the

Property's address a second Notice of Acceleration and Posting, along with a new Notice of Trustee's sale informing her that the foreclosure sale was on August 5, 2008, starting no earlier than 12:30 p.m. (Schwartz Aff. ¶ 10 and Exh. 7).

FDIC explains that after the Trustee's foreclosure sale on August 5, 2008, at the time and place noticed, on September 23, 2008 the Clarks filed suit in state court against Washington Mutual Bank Servicing Agent and Washington Mutual Bank, F.A., alleging wrongful foreclosure. On September 25, 2008 the Office of Thrift Supervision declared WaMu insolvent and appointed FDIC as its receiver pursuant to 12 U.S.C. § 1821(c). Barter Aff., Exhs. 1 and 2 attached as Ex. B to #20. FDIC maintains that it properly published notice on October 1, 2008, October 31, 2008, and December 1, 2008, notifying creditors that administrative claims against WaMu had to be submitted to FDIC by December 30, 2008. Barter Aff. ¶ 6. Additionally it mailed a Notice to Discovered Creditor-Proof of Claim ("Claims Notice") on January 22, 2009 directed to Daniel Clark by and through Plaintiffs' counsel, extending Plaintiffs' claims bar deadline to April 22, 2009 and explaining the mandatory procedures for asserting a claim against the Receiver. Barter Aff. ¶ 8 and Exh. 3. FDIC maintains that as a matter of law notice to a party's attorney is notice to the party. *Link v. Wabash*, 370 U.S. 626, 634 (1962)(a litigant "is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can

be charged upon the attorney.'"").  Nevertheless Plaintiffs did not
file their claims until May 15, 2009, and then failed to include any
evidence or documentation despite instructions to do so on the
Claims Notice.  Barter Aff., ¶¶ 14-15 and Ex. 4.  On June 3, 2009
FDIC disallowed Plaintiff's claim as untimely.  Barter Aff. ¶ 16 and
Exh. 5.  On July 9, 2009 FDIC filed a motion to stay pending
litigation because of Plaintiffs' failure to exhaust and asked to
substitute FDIC as the real party in interest (Exh. A-13).  On
October 16, 2009 FDIC was substituted as Receiver for Defendants.
On December 3, 2009 FDIC timely removed the suit under 12 U.S.C. §
1819(b)(2)(B) (#1).

FDIC argues that Plaintiffs failed to exhaust their
administrative remedies under FIRREA, which applies to pre-
receivership claims like Plaintiffs'.  *Carney*, 19 F.3d at 955.
Because Plaintiffs filed to timely file proofs of claim, their
claims are barred as a matter of law and this Court lacks subject
matter jurisdiction over all of their damage claims asserted against
WaMu or FDIC.[5]

---

[5] In *Punzalan*, 633 F. Supp. 2d at 412-13, the plaintiffs filed suit before appointment of
the Receiver for the failed bank.  FDIC mailed the plaintiffs' counsel notice of the administrative
claims procedure.  Plaintiffs claimed that FDIC had used an incorrect zip code.  The court found
that the notice was sufficient because the plaintiffs did not rebut that it was the address provided
to the failed bank and that their attorney actually received the notice.  The court thus dismissed
the plaintiffs' wrongful foreclosure claims for lack of subject matter jurisdiction because they
had not exhausted their administrative remedies.

FDIC states that it published[6] and mailed notices to Plaintiffs in compliance with § 1821(d)(3)(B)-(C), instructing them to present their claims for FDIC's determination.  It also met its statutory obligation to provide individual mailed notice of administrative claims process and the claims date to all creditors listed on the books.  It attempted to complete that notice by November 30, 2008, but for those it did not reach until later, it send additional notice by letter within 30 days after the claims bar date and offered them an opportunity to submit a claim with evidence of their lack of earlier notice and with proof required under FIRREA. Barter Aff. ¶ 7.

In regard to Plaintiffs, FDIC mailed their counsel a Notice to Discovered Creditor-Proof of Claim ("Claims Notice") on January 22, 2009.  Barter Aff. ¶¶ 7-9 and Exh. 3.  *Link*, 370 U.S. at 634 (a litigant "is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney").  The Claims Notice stated that although the Claims Bar Date had passed under federal law, FDIC could consider late claims if (1) the claimant had not received notice of the appointment of the Receiver in time to file a claim and (2) the claim was filed in time to permit its payment.  12 U.S.C. § 1821(d)(5)(C).  Barter Aff. ¶ 11 and Exh. 3.  It also stated that

---

[6] FDIC states that in compliance with § 1821(d)(3)(B) it published and republished on October 1, 2008, October 31, 2008 and December 1, 2008 notice in *The Seattle Times*, *The Las Vegas Review-Journal/Las Vegas Sun Newspapers* and *The Wall Street Journal*.  Barter Aff. ¶ 6.

although the Claims Bar Date had not been extended, the Receiver would consider a late filed claim if the claimant demonstrated to the Receiver's satisfaction that the claimant did not have knowledge of the appointment of the Receiver in time to file a claim within the Claims Bar Date. Barter Aff. ¶ 12 and Exh. 3.  The Notice also warned that for the claim to be considered, a claimant had to complete the enclosed Proof of Claim Form, sign it, and provide supporting documentation for the claim and for the claimant's lack of knowledge of the appointment of the Receiver and submit that documentation to FDIC at an address provided before April 22, 2009. Barter Aff. ¶ 13 and Exh. 3.  Plaintiffs have admitted that Daniel Clark received the Claims Notice through his attorney on January 22, 2009.  *See* Plaintiffs' Plea to the Jurisdiction ¶3, Ex. A, attached to FDIC's notice of removal, #1, A-17.  They also admit that they have maintained an attorney-client relationship with that attorney since at least September 23, 2009.  *Id.* at ¶ 1-2.[7]  Because that attorney was attorney for both the Clarks and because counsel received the Claims Notice, Chastity Clark also received notice. *Link*, 370 U.S. at 634.  Moreover Plaintiffs' attorney filed a Proof of Claim, although untimely, on behalf of both the Clarks.  Barter Aff., Exh. 4.

Plaintiffs did not file their claim until May 15, 2009.  Barter

---

[7] The Court notes that on November 30, 2010, after all briefing on the pending motions had been completed, the Clarks' counsel moved to withdraw (#21).  The Court granted that motion on December 21, 2010 (#34).

Aff. ¶ 15, Exh. 4.  Even then, their claim did not include any evidence or documentation requested by the Claims Notice.  Barter Aff. ¶ 15, Exh. 4.  FDIC rejected their claim as untimely.  Barter Aff. § 16 and Exh. 5.  Claims filed after the bar date "shall be disallowed and such disallowance shall be final."  12 U.S.C. § 1821(d)(5)(C)(i).  As a matter of federal law, failure to timely file proof of claim against the Receivership bars any further assertion of the claims by Plaintiffs in this litigation or under the FIRREA administrative claims process.[8]  12 U.S.C. § 1281(d)(13)(D); *Meliezer*, 952 F.2d at 882.

Alternatively, based on the same legal grounds, the FDIC moves for summary judgment, first on the grounds that WaMu contractually complied with the notice requirements under the Deed of Trust and under the Texas Property Code § 51.002.  The Promissory Note entered into by Daniel Clark and WaMu provides that "any notice that must be given to me under this Note will be given by delivering it or mailing it first class mail to me at the Property Address above or at a different address if I give [WaMu] notice of my different address."  #1, A-14, Exh. 1 at p.4.  The Deed of Trust at issue here similarly states,

---

[8] The main goal in requiring exhaustion of the administrative process under FIRREA was to permit the Receiver "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."  H.R. Rep. No. 101-54(i), at 419 (1989), as reprinted in 1989 U.S.C.A.A.N. 86, 215; *Meliezer*, 952 F. 2d at 882 (main purpose of FIRREA's exhaustion scheme was "to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation.").

> Any notice to Borrower in connection with this Security
> Instrument shall be deemed to have been given to Borrower
> when mailed by first class mail or when actually
> delivered to Borrower's notice address if sent by other
> means. . . . The notice address shall be the Property
> Address unless Borrower has designated a substitute
> notice address by notice to Lender.

*Id.*, Exh. 2, ¶ 15. WaMu sent its Notice of Intent to Accelerate and Demand for Payment to Daniel Clark, maker of the Note,[9] at the Property's address. Schwartz Aff., ¶ 4 and Exh. 1. Because Chastity Clark was not a signatory to the Promissory Note she was not entitled to notice under its terms. Although she was a party to the Deed of Trust, it stated, "notice to one Borrower shall constitute notice to all Borrowers." #1, A-14, Ex. 2, ¶ 15. Therefore, states FDIC, she waived personal notice under the terms of that document, and WaMu's Notice of Intent to Accelerate to Daniel Clark, addressed to the Property, met the requirements as to both Clarks.

As for the Texas Property Code § 51.002(d), FDIC recites that WaMu sent Plaintiff at least seven timely notices about their default under the Loan Documents and WaMu's impending foreclosure, which took place properly on August 5, 2008, that met statutory requirements. Schwartz Aff., Exhs. 1-7. Therefore FDIC maintains it is entitled to summary judgment on the wrongful foreclosure

---

[9] Notice of Intent to Accelerate to the maker of a note is a prerequisite to the note holder's exercising its right to accelerate the time for any payment due on the note. *Ogden v. Gibralter Sav. Ass'n*, 640 S.W. 2d 232, 233 (Tex. 1982).

Plaintiffs object that *Ogden* is not applicable because it does not address the issue of notice when a co-signer of a deed of trust does not co-sign the notice.

claim.

Plaintiffs' objection that they did not receive one or more notices required by law is not relevant. Texas Property Code § 51.002(e) states, "Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." *See* Schwartz Aff., ¶¶ 2-11. Plaintiffs have no basis to challenge the validity of the foreclosure.

Moreover, the *D'Oench, Duhme* doctrine bars the parties to a note from asserting agreements or promises outside the note itself against a failed banking institution. *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447 (1942), unanimously reaffirmed, *Langley v. FDIC*, 484 U.S. 86 (1987). The doctrine was codified as the Federal Deposit Insurance Act of 1950, section 2(13)(e), 64 Stat. 889, as amended, 12 U.S.C. § 1823(e). Texas courts have extended the doctrine to preclude claims where the acts or conduct of the failed banking institution's employees or third parties form the basis of a claim against the Receiver and applied it to bar claims of wrongful foreclosure. *AmWest Sav. v. Farmers Mkt. of Odessa*, 753 F. supp. 1339, 1345 (W.D. Tex. 1990), *citing NCNB Tex. Nat'l Bank v. Campise*, 788 S.W. 2d 115 (Tex. App.--Houston [14th Dist.] 1990).

In addition, a party seeking a remedy for wrongful foreclosure must show that it suffered harm. *Baker v. Countrywide Home Loans,*

*Inc.*, Civ. A. No. 3:08-CV-0916-B, 2009 WL 1810336, *4 (N.D. Tex. June 24, 2009)[10](since plaintiffs never lost possession of their homestead and did not make monthly payments, they were not entitled to damages, an essential element of wrongful foreclosure).

So, too, is Plaintiffs' request for equitable relief barred by § 1821(j) of FIRREA ("LIMITATION ON COURT ACTION.--Except as provided in this section, no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."). *See Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 548-49 (5th Cir. 1993)(Section 1821(j) "expressly limits the court's power to enjoin the FDIC when the FDIC is acting as a conservator or receiver."). The Fifth Circuit has "repeatedly recognized that the FDIC's enumerated powers as receiver are both extensive and discretionary, free from court-imposed restraints." *First Gibralter Bank, FSB v. Bradley*, 98 F.3d 1338, 1996 WL 556852, *3 n.7 (5th Cir. Sept. 10, 1996).

In sum, FDIC maintains that WaMu conducted a valid foreclosure sale and Plaintiffs are not entitled to cancellation of the

---

[10] The *Baker* court opined, *id.* at 4,

In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of the foreclosure and the remaining balance due on the indebtedness. This measure of damages is based upon a tort theory of recovery to compensate the aggrieved for his lost *possession* of the property. Because recovery is premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure. As such, courts in Texas do not recognize an action for attempted wrongful foreclosure.

trustee's deed or to recover title to the property. *Slaughter v. Qualls*, 162 S.W. 2d 671, 674 (Tex. 1942)(foreclosure sale must be void in order for debtor to set aside the sale, cancel the trustee's deed, and recover title to the property. Equitable relief cannot be rendered against FDIC in this action.

FDIC further contends that Plaintiffs' request for attorneys' fees from the FDIC in its capacity as receiver is barred by Fifth Circuit precedent. *Interfirst Bank Abilene, N.A. v. FDIC*, 777 F.2d 1092, 1097 and n.2 (5th Cir. 1985)(enforcement of federal law requiring ratable distribution of an insolvent bank's assets precludes application of any state law otherwise allowing recovery of attorneys' fees). Generally a claim for fees cannot prevail against the assets of a failed bank. *Id.* at 1097; *FDIC v. Scott*, 125 F.3d 254, 260 (5th Cir. 1997). Fees can only be recovered if there is a collateral source to satisfy them or if there is a particular contractual provision allowing such. *Id.; id.* Here there is no collateral source and no provision granting fees to Plaintiffs.

Finally and alternatively FDIC suggests that any valid claims against it can only be paid with Receivership certificates instead of cash under 12 U.S.C. § 1821(i)(receiver's "maximum liability" "shall equal the amount such claimant would have received if the [FDIC as receiver] had liquidated the assets of such institution"). Although Plaintiffs seek a money judgment, FIRREA allows FDIC to

-24-

make payment to an approved creditor of a failed bank by delivering a receivership certificate, sometimes called a "Certificate of Award," rather than payment in cash or "cash equivalent." *RTC v. Titan Fin. corp.*, 36 F.3d 891, 892-93 (9th Cir. 1994)("the FDIC may use receiver's certificates as its manner of payment because requiring cash payments would subvert the comprehensive scheme of FIRREA, including § 821(i)(2)'s limitation on an unsecured general creditor's claim to only a pro rata share of the proceeds from the liquidation of the financial institution's assets"). Requiring FDIC to pay some creditors in cash would allow those creditors to "jump the line" and recover more than their pro rata share of the liquidated assets if the financial institution's debts exceed its assets. *Id.* To the extent that Plaintiffs obtain a judgment for damages, that judgment provides them with a right to a pro rata share of funds available to pay unsecured creditors of the Receivership if any funds are available.

In sum, FDIC requests the Court to dismiss the claims against it and WaMu for lack of subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies or, alternatively, for summary judgment as a matter of law on each of their claims.

## A. Plaintiffs' Response (#24)

In response, the Clarks first raise numerous objections to the admissibility of FDIC's evidence.  Because the Court fully agrees

with the FDIC's reply (#30) supporting the admissibility of the
evidentiary documents attached to its motion, the Court adopts and
incorporates its justifications and objections to Plaintiffs'
evidence into this opinion and order, overrules Plaintiffs'
objections, grants FDIC's motion to strike (included in FDIC's
Reply, #30), and therefore does not summarize the various arguments
laid out in the parties' submissions.

Plaintiffs reiterate the allegations in their complaint. They
insist that FDIC failed to mail notice of the claims process to
Chastity Clark and therefore forfeited its right to proceed with the
administrative process; instead it must proceed with this suit.
*Greater Slidell*, 32 F.3d at 941 ("Subject to paragraph (12), the
filing of a claim with the receiver shall not prejudice any right
of the claimant to continue any action which was filed before the
appointment of the receiver"). Moreover, Plaintiffs' suit was filed
before the appointment of the FDIC as Receiver so this Court has
jurisdiction under the Federal Deposit Insurance Act, 12 U.S.C. §
1821(d)(5)(F)(ii). *Whatley v. RTC*, 32 F.3d 905, 907 (5th Cir.
1994)(Subject matter jurisdiction is tested as of the time of the
filing of the complaint), *rehearing and rehearing en banc denied*,
38 F.3d 760 (5th Cir. 1994); *Carney*, 19 F.3d at 955; *Marquis v.
FDIC*, 965 F.2d 1148, 1153 (1st Cir. 1992). Moreover §
1821(d)(12)(A) recognizes the continued jurisdiction of a court in
a pre-receivership case. *In re: Lewis*, 398 F.3d 735, 745 (6th Cir.

2005).  Because Plaintiffs filed their suit before appointment of the receiver, this Court continues to have jurisdiction, making dismissal improper.

Section 1821(d) allows a receiver within ninety days after its appointment to request a stay of judicial proceedings so that it may consider the pending claim administratively.  If the receiver chooses not to or fails to do so, no stay may be sought after that ninety-day period and the judicial action will routinely proceed. *Whatley*, 32 F.3d at 908-09; *Praxis Properties v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 65 (3d Cir. 1991).

Plaintiffs argue that the Fifth Circuit and other Courts of Appeals have interpreted these and other paragraphs of subsection 1821(d) to mean that a separate scheme exists for the disposition of lawsuits filed pre-receivership. *Carney*, 19 F.3d 950; *Brady Dev. Co. v. RTC*, 14 F.3d 998 (4th Cir. 1994); *Damiano v. FDIC*, 104 F.3d 328, 335 (11th Cir. 1997).  If the receiver does not request a stay of a plaintiff's pre-receivership suit, it is deemed to have chosen to proceed with the litigation. *Whatley,* 32 F.3d at 910.  Here FDIC was appointed receiver on September 25, 2009, two days after this suit was filed.  It did not file a motion to stay proceedings until July 9, 2009, more than nine months after its appointment.  Because FDIC did not timely request a stay, it is deemed to have elected to proceed with the litigation.  Furthermore, FDIC's failure to avail itself of Paragraph 12 of § 1821(d)(ii) relieved Plaintiffs of the

requirement of filing an administrative claim.  *Damiano*, 104 F.3d at 335.   Thus the Court should deny FDIC's motion to dismiss.

Plaintiffs urge that the Receiver should not be permitted to manipulate the administrative claims procedure to prevent Plaintiffs from having their claims decided on the merits.  Not only did FDIC not provide Chastity Clark with personal notice, but for months after entry of the temporary restraining order WaMu continued to participate in settlement negotiations, while its attorney did not inform Plaintiffs that he lacked authority to act on WaMu's behalf or that the receiver was going to substitute as a party, all resulting in protracted delay to Plaintiffs' detriment.  *Whatley*, 32 F.3d at 909-10 ("RTC may not distort the provisions designed to facilitate the processing of claims into a tool for subverting the rights of claimants to present their claims on the merits.").

In response to FDIC's motion for summary judgment on the claim that Plaintiffs failed to exhaust administrative remedies, Plaintiffs again object that FDIC failed to provide competent summary judgment evidence that it published the notice on the specified dates in the specified periodicals, failed to show it published notice where the Property was located, failed to show it complied with § 1821(d)(3)(C)'s requirement that it mail notice of its claims procedure to any creditor listed on the institution's books, failed to show it sent a Claims Notice to Chastity Clark, and failed to request a stay within 90 days of appointment as required

by Paragraph 12 of § 1821(d).

Plaintiffs also state there are genuine issues of material fact regarding essential elements of their wrongful foreclosure claims: whether the Note was in default at the time of foreclosure; whether WaMu mailed notice of intent to accelerate to Chastity Clark; and whether Chastity Clark waived notice on intent to accelerate under the loan documents.   The Deed of Trust identified both Clarks as borrowers.  #24, Ex. 2, p.1, "Definitions" (B).  The Deed of Trust required notice to all borrowers prior to acceleration following the "Borrower's breach of any covenant or agreement in this Security Instrument."  *Id.* at p.11, ¶ 22.  "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges" is one of those covenants.  *Id.*, p.3, ¶ 1.  Moreover, paragraph 15 of the Notice Provision of the Deed of Trust states, "Notice to any one borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise."  The Deed of Trust defers to state law, specifically Texas Property Code § 51.002 (requiring a lender foreclosing under a deed of trust must provide notice of intent to accelerate to all debtors) on the question of notice.  Moreover FDIC failed to submit summary judgment evidence demonstrating that WaMu sent notice of intent to accelerate to Chastity Clark, who states that she did not receive any.

Plaintiffs also insist that *D'Oench, Duhme* does not apply here. The doctrine, as described by FDIC, "prevents parties to a note from

asserting agreement or promises outside the note itself against a failed bank institutions." #20 at 16.  Plaintiffs have alleged that the Note was not in default because of their overpayments of taxes, a matter that can be resolved by looking at the terms of default in the written loan agreement and deed of trust.[11]  *FDIC v. Lauarta*, 939 F.2d 1231, 1239 (5th Cir. 1991)(holding that because funding obligations were spelled out in the Loan Agreement and Modification Agreement, the D'Oench, Duhme doctrine did not apply).

     To FDIC's argument that Plaintiffs suffered no harm from the

---

[11] Although JPMC has attached copies of these documents to its motion for summary judgment, Plaintiffs fail to identify specifically where these statements are found and what they say.  Nor do they present any other documents relating to the taxes that might be in the bank's records.

     Regarding their other claims such as wrongful acceleration and unreasonable sale at foreclosure however, the Fifth Circuit has held that the *D'Oench, Duhme* doctrine does not bar their assertion against the FDIC as receiver:

> *D'Oench, Duhme* does not of itself thwart the assertion of rights for relief from wrongful acceleration and unreasonable sale at foreclosure.  *See Garrett v. Commonwealth Mortgage Corporation of America*, 938 F.2d 591, 595 (5th Cir. 1991)("Neither section 1823(e) nor the *D'Oench, Duhme* doctrine prevents plaintiffs from asserting claims or defenses that *do not depend on agreements*." We repeat, D'Oench, Duhme only protects the FDIC and federally-created bridge banks from oral agreements that for some reason do not become part of the loan record (usually, oral agreements).
>      Obligations about timely acceleration and the disposal of collateral are implicit in every promissory note.  These covenants are inferred in every such loan agreement.  *See International Bank, N.A. v. Morales*, 736 S.W. 2d 622, 624 (Tex. 1987); *Kierstead v. City of San Antonio*, 643 S.W. 2d 118, 121 (Tex. 1982).  And, because they are an integral element of the relationship between every borrower and lender, they cannot be said to be secret or unwritten in the *D'Oench, Duhme* sense.

*Texas Refrigeration Supply, Inc.*, 953 F.2d 975, 981 (5th Cir. 1992).

wrongful foreclosure because they are still in possession of the Property, Plaintiffs point out that they have alternative remedies to choose from for a wrongful foreclosure:  they may elect to set aside the void trustee's debt or to recover damages in the amount of the value of the property less indebtedness. *Rodriguez v. Ocwen Loan Servicing, Inc.*, No. 4:07-CV-4546, 2008 WL 239652, *2 n.9 (S.D. Tex. Jan. 29, 2008).  Since WaMu foreclosed on their property and filed a substitute trustee's deed, they are not alleging an "attempted" wrongful foreclosure as in *Baker v. Countrywide Home Loans*, and they can sue for cancellation of the trustee's deed.

Moreover Plaintiffs state they are not seeking injunctive relief, so 12 U.S.C. § 1821(j) is not relevant.

As for attorney's fees, Plaintiffs argue that they need only show and have shown that at the time of the insolvency (September 25, 2008) they had a cause of action, filed on September 23, 2008, and were actively pursuing their clams against the bank. *Adams v. Zimmerman*, 73 F.3d 1164, 1176 (1st Cir. 1996)(Under 12 U.S.C. § 410(a), if claims for fees were provable at the time of insolvency and plaintiffs were actively pursuing their claims against the bank at the time the bank became insolvent, plaintiffs can seek to recover attorneys' fees for the amount due and owing at time of insolvency); *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261 (E.D.N.Y. 2010)(finding that "the weight of case law suggests that ratable distribution need not be a general bar to recovering

attorneys' fees" and following *Adams v. Zimmerman*).   At minimum there is a fact issue whether they were actively pursuing their claims against WaMu.   Moreover they can recover fees if a specific contractual provision or collateral source is available to satisfy the claim.   *Scott*, 125 F.3d at 260; *Interfirst Bank*, 777 F.2d at 1097.   FDIC's blanket statement that there is no collateral source of funding is not supported by evidence, argue Plaintiffs.   Yet the Court observes that Plaintiffs fail to identify either a contractual provision or a collateral source that might satisfy their claim despite the fact that they bear the burden to plead and prove their right to fees.

Finally, contend Plaintiffs, there is no authority for FDIC's argument that claims against it can only be paid with a receivership certificate.   That is an option, not a duty.   *Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999)("There is no question that the FDIC may pay creditors with receiver's certificates instead of cash."), *cert. denied*, 531 U.S. 812 (2000); *Chicago Title and Trust Co. v. Timotijevic*, No. 02 C 2165, 2004 WL 691754, *2 & n.2 (N.D. Ill. Mar. 29, 2004).   FDIC agrees, but since the option belongs to FDIC, it elects that should Plaintiffs prevail, any recovery will be payable by Receiver Certificate.   The Court agrees that the choice, if it were to become a ripe issue, belongs to the Receiver.

**B.   FDIC's Reply (#30)**

FDIC insists that its notice of the claims process and bar date

was sufficient. Peter Barter's affidavit establishes that notice was published pursuant to § 1821(d)(3)(B) in four major periodicals, all of which are in general circulation in Harris County, Texas. The Court agrees. Regardless Plaintiffs cite no authority for their argument that FDIC must publish notice in the county where the suit is pending and the statue does not expressly require such.

While Plaintiffs complain that Daniel Clark did not receive mailed notice until after the initial claims bar date, FDIC is permitted under FIRREA to consider claims submitted after that date, as it explained in its Notice to Discovered Creditor-Proof of Claim, dated January 22, 2009, which it sent to Plaintiffs' counsel and which Plaintiffs concede their counsel received. 12 U.S.C. § 1821(d)(5)(C). Barter Aff. ¶ 8 and Exh. 3. Plaintiffs also do not dispute that Darrell W. Cook is counsel for both Clarks and that Daniel Clark received mailed notice through that joint counsel.

FDIC further argues that Plaintiffs knew that FDIC had been appointed Receiver over WaMu before the original claims bar date of December 30, 2008, as evidenced by admitted conversations with WaMu's counsel beginning at least by October 24, 2008 regarding settlement negotiations and efforts to find someone at Chase with authority to settle the claims.[12] FDIC's January 22, 2009 Claims

_____

[12] Nevertheless the Court notes that the filing of a motion to stay within ninety days of appointment is the burden of the Receiver, not of the claimant. Moreover the Receiver's obligation to provide notice of its claims procedure by mail to the Clarks as known claimants because of this pending suit arises from their constitutional right to due process. *Greater Slidell Auto Auction, Inc. v. American Bank & Trust Co. of Baton Rouge, La.*, 32 F.3d 939, 942 (5th Cir.

Notice sent to Plaintiffs' counsel, Darrell Cook, informed Plaintiffs that FDIC had been appointed Receiver over WaMu and that FDIC had extended the claim bar date until April 22, 2009 for Plaintiffs. Barter Aff. and Exh. 3; 12 U.S.C. § 1821(d)(5)(C). As noted, Plaintiffs failed to file their claims until May 15, 2009, and FDIC disallowed them as untimely. Barter Aff., ¶¶ 14-15 and Exhs. 4-5. FDIC attempts to distinguish its situation here from that in *Whatley* by arguing that in *Whatley,* 32 F.3d 905, the claimants had no actual notice of the claims process from FDIC, while here it asked Plaintiffs to participate in the administrative claims process before FDIC made an appearance in the pending litigation.

FDIC argues that Plaintiffs have waived Daniel Clark's claim for wrongful foreclosure because they have failed to present any evidence that the Property address was their residence at the time, as required to invoke the legal foreclosure notices. Tex. Prop. Code § 51.002(d). Instead, the WaMu was given notice on April 2, 2008 that Daniel Clark had been traded by the Houston Texans to the New York Giants football team and no longer resided in Houston, but in New York. #24, ¶ 8 and Exh. 7.

In response to Plaintiffs' unsupported claim that the loan was not in default, FDIC points out that this assertion is defeated by the Substitute Trustee's Deed attached to their response: as a

1994).

matter of law recitals in deeds of trust are *prima facie* evidence that the terms of the trust have been fulfilled. *Century Savings v. Eastland*, 21 F.3d 1107, No. 93-2401, 1994 WL 171463, *2 (5th Cir. Apr. 21, 1994)("The substitute trustee's deed recited each of the conditions precedent necessary to establish that the foreclosure complied with the terms of the deed of trust, and, absent some showing of a specific defect, those recitations are presumed correct."), *citing Houston First Am. Sav. v. Musick*, 650 S.W. 2d 764, 767 (Tex. 1983); Fed. R. Evid. 902(4). Thus the trustee's deed raised presumptions of default, due acceleration, and foreclosure bid price, which can only be rebutted by competent evidence, which Plaintiffs have not submitted; they have only made inadmissible conclusory allegations. Fed. R. Civ. P. 56.

FDIC further points out that the promissory note executed by Daniel Clark (#24, Exh.1) explicitly provides that failure to pay in full any monthly payment amount is an event of default permitting the lender to elect to accelerate the note. Uncontroverted evidence attached to JPMC's motion for summary judgment (#21, SJ Evid. 24-28) demonstrates that the last payment credited to the Clarks' loan was in January 2008. In February 2008 the payment was reversed when Plaintiffs' bank dishonored their check due to insufficient funds in their account. *Id.* At the time of foreclosure at August 1, 2008, Plaintiffs had failed to make six monthly payments of $3,720.24 each, leaving a balance of at least $22,321.44 owing,

exclusive of late charges or other fees.

Plaintiffs allege in their complaint that they overpaid taxes in the amount of $18,000 and were not credited, and they submitted the affidavit of Chastity Clark (Exh A to #24) stating that a WaMu customer representative told her that at her request the overpayment be applied to pending and future payments on the Note. The Court is granting FDIC's motion to strike that portion of affidavit, *inter alia,* as hearsay. Even if it did not, FDIC argues that the *D'Oench, Duhme* doctrine precludes the claim that WaMu failed to comply with the oral agreement between Chastity Clark and a WaMu representative that the money would be applied toward payments on the note. *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447 (1942)(barring parties to a loan document from asserting agreements or promises outside the loan document against a failed banking institution for which a receiver is appointed), *unanimously aff'd*, *Langley v. FDIC*, 484 U.S. 86 (1987).[13] FDIC points out that there is also no

---

[13] In 1950 Congress codified the basic principle of the D'Oench, Duhme common law doctrine in 12 U.S.C. § 1823(e), which provides,

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or Section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement:
> (1) is in writing,
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (3) was approved by the board of directors of the depositor institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

statement in the Deed of Trust, the applicable loan document, that permits Plaintiffs to extend escrow overages to monthly principal payments. *D'Oench, Duhme* restricts any agreement between Chastity Clark and WaMu to the express language of the Deed of Trust. The Court agrees that the doctrine bars any alleged oral agreement between WaMu and Chastity Clark that the overpaid insurance funds would be applied to the monthly payments due under the Note. *See also, e.g., Texas Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 979 (5th Cir. 1992)(""[O]ne who has dealt with a failed FDIC-insured institution may not assert a claim or defense against the FDIC that depends on some understanding that is not reflected in the insolvent bank's records.").

Furthermore argues FDIC, WaMu had the option to accelerate the Note after Daniel Clark, the sole signatory on the Note, defaulted on the payments and FDIC gave proper written notice of intent to accelerate, notice of acceleration, and notice of substitute trustee sale only to Daniel Clark at the Property address in accordance with the Deed of Trust (the address for receiving notices from Lender "shall be the Property address unless Borrower has designated a substitute notice address by notice to Lender. . . . Any notice to

---

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Before passage of FIRREA, applied only to the FDIC in its corporate capacity, but section 217(4) of FIRREA extended the statute's provisions of the FDIC acting in its receivership capacity and to the RTC and bridge banks. 12 U.S.C. §§ 1441a(b)(4) and 821(n)(4)(I)(i)-(iv).

Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein."). #24, Exh. 2, ¶ 15. *Ogden v. Gibralter Sav. Ass'n*, 640 S.W. 2d 232, 232 (Tex. 1982)("Where the holder of a promissory note has the option to accelerate maturity of the note upon the maker's default, equity demands notice be given of the intent to exercise the option."). Texas Property Code § 51.001(2) states that the Property address is the correct address for notices. Plaintiffs have failed to submit any evidence that the Property address was no longer their designated address for receiving notices under the Deed of Trust. Moreover WaMu did not send notice to Chastity Clark because she was not a "maker" of the note; only Daniel Clark was the "maker." Section 51.002 requires notice to a debtor.[14] The Deed of Trust does define the Borrower as "Daniel Clark, IV and spouse, Chastity Clark," but it also provides, "Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." Here the applicable law does not so require.

Regarding their wrongful foreclosure claim, although Plaintiffs state they do not seek injunctive relief, they do in essence seek rescission of the foreclosure sale. Rescission is an equitable remedy and therefore is prohibited. 12 U.S.C. § 1821(j). In addition 12 U.S.C. § 1821(d)(13)(D) bars any court from exercising

---

[14] WaMu did send Chastity Clark notice of default with an opportunity to cure by letters dated May 29, 2008 and June 9, 2008, as required under under § 51.002. #20, Exh. A, Schwartz Aff., ¶¶ 6,8 and Exs. 3-5; #24, Exh. 6.

jurisdiction over claims seeking a determination of rights with respect to the assets of any depository institution for which FDIC has been appointed receiver. The authority cited by Plaintiffs does not address FIRREA or the jurisdictional limitations imposed by § 1821(j). The Court agrees with FDIC that Plaintiffs cannot seek rescission of the foreclosure sale against FDIC in its capacity as appointed Receiver for WaMu. *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007)(section 1821(j) bars injunctive relief, a declaratory judgment that would "restrain" the FDIC as receiver from foreclosing on property of debtors, and granting rescission of the underlying transaction)(*citing Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995), and *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir. 1996)), *cert. denied*, 552 U.S. 1184 (2008). Thus the Court agrees with FDIC that Plaintiffs are limited to a claim for money damages.

FDIC insists Plaintiffs cannot recover attorneys' fees, and not just because their claim for wrongful foreclosure fails. Unless a statute or contract authorizes an award of such fees, the American Rule requires each party in federal litigation to pay its own fees. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 245-65 (1975). Plaintiffs fail to identify a contract or statutory authorization providing for fees here. Furthermore in 12 U.S.C. § 1825(b)(3)(exempting FDIC from liability for "any amounts in the nature of penalties or fines, including those arising from the

failure to pay any real property, personal property, probate, or recording tax or any recoding or filing fees when due"), the "FDIC is immune from penalties imposed by the Texas usury laws." *FDIC v. Southwest Motor Coach Corp.*, 780 F. Supp. 421, 423 (N.D. Tex. 1991). The FDIC contends that courts routinely view attorney fee awards as penal in nature. *See, e.g., Carollton-Farmers Branch ISD v. FDIC*, 776 F. Supp. 1180, 1185-86 (N.D. Tex. 1991)(recognizing that along with interest and collection costs, attorneys' fees are penalties for the purposes of FIRREA); *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)(statutes in Chapter 38 providing for attorney fees are penal in nature and should be strictly construed).[15]   Finally a fee award against FDIC would be barred by Section 1821(j) as an impermissible preference that would contravene ratable distribution requirements under 12 U.S.C. § 1821(i) by preferring certain creditors over others. *U.S. ex rel. White v. Knox*, 111 U.S. 784, 788 (1884)("No provision is made by law for the payment of the expenses of the claimant . . . and necessarily that loss must fall on him.").   "[W]here recovery of attorney's fees is not specified in the parties' contract or where there is no collateral fund from which they can be recovered, a claim for attorneys' fees  cannot be asserted against the assets of a failed bank." *InterFirst Bank-Abilene*, 777 F.2d 1092.   The Fifth Circuit

---

[15] Section 38.001 was subsequently amended to include contract claims and the Legislature enacted legislation requiring a liberal construction of the statute. *½ Price Checks Cashed v. United Auto. Ins. Co.*, No. 10-0434, 2011 WL 2517036, *9 n.10 (Tex. June 24, 2011).

further reasoned that the fee claim was not provable if it was not fixed and certain at the time the receiver was appointed. *Id.*

To Plaintiffs' insistence that the jurisdictional bar does not apply because the FDIC did not move for a ninety-day stay of the judicial proceedings, the FDIC responds that the Fifth Circuit does not strictly enforce that time requirement. *Kaplan v. First City, Texas-Houston, N.A.*, 48 F.3d 531, 1995 WL 84441, *1 (5th Cir. Feb. 15, 1995).[16] Contesting Plaintiffs' argument that they filed suit two days before the FDIC was appointed Receiver, FDIC asks the Court to take judicial notice of the sworn Return of Citation filed in the state court action (#1-5). Plaintiffs failed to have citation issued until October 1, 2008 and citation was not executed on WaMu until October 1, 2008, more than a week after the appointment. Neither WaMu nor FDIC on behalf of WaMu appeared in the action until May 14, 2009, more than 230 days after the appointment of FDIC as receiver, 225 days from the first published notice, and 112 days after notice to Plaintiffs' counsel by the Claims Notice, which Plaintiffs admit he received on January 22, 2009, almost four months before FDIC appeared.

## C.  Court's Decision on FDIC's Motion

The Court disagrees with the FDIC that the Court lacks subject

---

[16] The Court finds unpersuasive this broad conclusion that the Fifth Circuit does not strictly enforce the ninety-day period is supported by a single, unpublished case that does not directly address the question and which, according to Westlaw's Keycite, has never been cited in a published opinion.

matter jurisdiction over this action because Plaintiffs failed to exhaust their administrative remedies.  This Court would emphasize that in determining whether a lawsuit was filed pre-receivership, the statute and the case law use the word "file," not "serve," and date of "appointment," not "appearance" in the suit.  Thus the Court concludes this action was instituted pre-receivership.

In *Whatley v. RTC*, 32 F.3d 905 (5th Cir. 1994), the Fifth Circuit Court of Appeals addressed the distinction between claims in lawsuits filed before appointment of a Receiver and claims filed in lawsuits after the appointment and determined that FIRREA provides two separate schemes for dealing with them.  The appellate court first noted that "'FIRREA contains no provision granting federal jurisdiction to claims filed after a receiver is appointed but before administrative exhaustion.'"  *Whatley*, 32 F.3d at 907, *quoting Meliezer*, 952 F.2d at 882.  Observing that subject matter jurisdiction is determined at the time of the filing of an action, the appellate panel concluded under language in FIRREA that a district court that had valid subject matter jurisdiction over a suit filed before the appointment of a receiver continues to be vested with jurisdiction.  Section 1821(d)(5)(F) states, "Subject to paragraph 12, the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver."  *Whatley*, 32 F.3d at 907.  Paragraph (12) provides that after the receiver is appointed,

it "may request a stay for a period not to exceed . . . (ii) 90
days, . . . in any judicial action or proceeding to which such
institution is or becomes a party."  *Id.*, *quoting* 12 U.S.C. §
1821(d)(12)(A)(ii).   Moreover 12 U.S.C. § 1821(d)(6)(A) and (8)(C)
allow a claimant to "continue" a suit filed before appointment of
a receiver and after its administrative claim has been disallowed.
*Id.* at 908 & n.15.  Thus claims properly filed with federal
jurisdiction are affected only by the stay provision:  "[t]his
legislatively-created framework strikes a fair balance between the
goals of efficiency and expediency underlying FIRREA, and the
interests of creditors who, having invoked the proper procedures for
protecting their rights, have expended time, money and energy in
properly asserting their claims.  *Id.* at 908.

As the Fifth Circuit opined in *Whatley*,

> Congress created a separate scheme for the handling of
> pre-receivership actions, giving the receiver the
> privilege, but not the duty, to request a stay of
> judicial proceedings so that it might first consider the
> pending claim administratively.  Neither a request for a
> stay nor the failure to request the stay deprives the
> district court of jurisdiction. Rather, if the receiver
> requests a stay, the court will defer action temporarily.
> If the receiver does not timely seek a stay, the judicial
> action will routinely proceed.  This does not mean that
> the judicial process runs concurrently with the
> administrative remedy.  Congress has given the receiver
> the option to either request a stay, and proceed
> administratively based on the claimant's complaint, or
> any substitute or supplemental filing it may request, *or*
> forego the privilege of requesting a stay and thus
> proceed judicially.  Should the receiver choose to
> proceed administratively, it must request the stay within
> 90 days of its appointment.  Thereafter no stay may be
> sought and the judicial action is to proceed.

*Id.* at 908-09.  The use of "*may*" throughout subsection 1821(d) is permissive, not mandatory, and allows, but does not require, the receiver to determine claims in accordance with FIRREA's administrative review process; paragraph 12(A)(ii) "grants the receiver the "privilege, should it choose to proceed administratively, to request a stay of judicial proceedings." *Id.* at 909.  "If Congress had intended the administrative procedure to be exclusive for pre-receivership actions, it would not have provided for the permissive stay." *Id.*  The appellate court held,

> with regard to actions filed before the receivership, the
> receiver may opt either for the judicial route by
> allowing the action to continue, or it may choose the
> administrative process, by moving for a stay within 90
> days of its appointment.  In the instant case, [the
> Receiver] did not timely request a stay of the
> plaintiffs' pre-receivership proceeding and it is
> therefore deemed to have determined to proceed with the
> litigation in federal court.

*Id.* at 910.[17]  While the Fifth Circuit recognized that the Fourth, Eighth and Tenth Circuits were not in accord with it, 32 F.3d at 910 n.29, the Eleventh Circuit has followed the Fifth Circuit's lead in *Whatley*, as has the Sixth.  *See Damiano v. FDIC*, 104 F.3d 328, 332-

---

[17] In *Greater Slidell Auto Auction, Inc. v. American Bank & Trust Co. of Baton Rouge, La.*, 32 F.3d 939 (5th Cir. 1994), the Receiver requested a stay but failed to mail Plaintiffs notice of the administrative claims procedure even though it knew about the Plaintiffs' suit, filed before its appointment, and even though it published notice of its appointment and of the claims deadline in a local newspaper in accordances with § 1821(d)(3)(B).  The majority of the panel held that where the Receiver fails to give notice by mail of any other claims procedure to a claimant with a suit pending against the failed institution when the receiver is appointed, which is a constitutional due process right, it must either request a stay and consider the pending law suit's claims in the administrative process or proceed with lawsuit.  *Id.* at 942.

35 (11ᵗʰ Cir. 1997); *FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1301-04 (11ᵗʰ Cir. 1998); *In re Lewis*, 398 F.3d 735, 743-46 (6ᵗʰ Cir. 2005).

Moreover in *Whatley*, the Fifth Circuit examined the reason for imposing the ninety-day limit from the date of appointment (not of when it learned of the claims) on the Receiver's opportunity to choose to file a motion to stay and proceed administratively to consider the claimant's claims:

> There is an added odious dimension when the receiver, with full knowledge of the pending lawsuit, foregoes a request for a stay and waits until the time for the administrative claims process has expired to appear in court requesting dismissal because of the plaintiffs' supposed failure to exhaust administrative remedies. In the eyes of the claimant—especially one who receives no actual notice of the administrative process—his lawsuit is awaiting disposition: the receiver, having intervened and been substituted as party defendant, ostensibly joins him in awaiting a hearing on the merits. In reality, however, the receiver lies in ambush, awaiting expiration of the administrative deadline so that it may dispose of the claim without consideration of its merits. We neither find nor assign any such intent to Congress in its enactment of FIRREA.

32 F.3d at 908. Such appears to be the case here. An extreme example of such "egregious" conduct by the FDIC is found in an action filed pre-receivership in *In re Lewis*, 398 F.3d at 746, where the receiver after appointment waited until the insolvent bank litigated through a final judgment, which it lost, in the bankruptcy court, through an appeal to the district court where it lost again, and up until the bank perfected an appeal to the Sixth Circuit before the receiver intervened and requested a stay.

From the start Plaintiffs' counsel has argued that following the filing of this action on September 23, 2008, he relied on the ninety-day limit from the appointment of the Receiver for it to file a motion to stay to pursue administrative review of the Clarks' claims.  While it is not clear exactly when FDIC became aware of the Clarks' suit, FDIC, itself, states that citation of the suit was executed in early October 2008.   FDIC initiated the administrative claims process when it published notice in the various periodicals at the beginning of October.  FDIC clearly knew of the existence of the Clarks' claim when it mailed the Claims Notice to Daniel Clark's attorney on January 22, 2009.  Only after the Clarks filed a motion for default judgment on May 11, 2009, did FDIC on May 14, 2009 file an answer to the suit and plea to the jurisdiction, raising Plaintiffs' failure to exhaust administrative remedies.  Though FDIC complains that the Clarks filed their claims without the required documentation with the FDIC on May 15, 2009, well past the extended bar date of April 22, 2009, and FDIC disallowed them on June 9, 2009, FDIC did not file a motion to stay this suit until July 9, 2009, more than ten months after its appointment and more than five months after mailing the Claims Notice to Daniel Clark via the Clarks' attorney.

Thus the Court concludes that given FDIC's failure to ask timely for a stay, it is deemed to have elected to proceed judicially in this action.  Therefore the Court has subject matter

jurisdiction and proceeds to rule on the FDIC's alternative motion for summary judgment.

Regarding Plaintiffs' claim for attorneys' fees, although it would not become ripe unless and until Plaintiffs prevail against FDIC, the Court concludes as a matter of law that it is not a viable cause of action in the context of this action.  In *Interfirst Bank-Abeline, N.A.*, the Fifth Circuit held that allowing attorneys' fees from a federal receiver in litigation against that receiver runs "afoul of the requirement that the assets of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims."  777 F.2d at 1096.  The panel therefore opined that fees are not recoverable against FDIC as receiver except where (1) the contract, which is the subject of the lawsuit, states that the prevailing party will be awarded fees or (2) there is a collateral fund specifically established for the benefit of the claimant out of which the fees could be taken. *Id.* at 1097, *cited for that proposition, FDIC v. Graham*, 882 S.W. 2d 890, 897 (Tex. App.--Houston [14th Dist.] 1994).  Plaintiffs, who bear the burden of proving their claim, have failed to plead, no less prove, a contractual provision or collateral fund that would support their claim, and the FDIC has stated that neither exists.  The Fifth Circuit further held that "when the only basis for attorneys' fees is the Texas catch-all statute awarding them in contract cases, . . . we find the enforcement of the federal statute [12 U.S.C. § 194]

requiring ratable distribution precludes" the claim for fees based on a state law statutes.  Here Plaintiffs have asserted their claim for fees under Texas Civil Practice and Remedies Code general § 38.001(8) for contract cases and under § 37.009 generally for declaratory judgment claims.  This Court concludes both are precluded by the federal statute requiring ratable distribution. Furthermore, in *Interfirst Bank-Abeline, N.A.,* the Fifth Circuit also applied a test established in *First Empire Bank v. FDIC*, 572 F.2d 1361, 1367-69 (9th Cir.), *cert. denied*, 439 U.S. 919 (1978), opining that a claim against a receiver is "provable" "if (1) it exists before the bank's insolvency and does not depend on any new contractual obligations arising later; (2) liability on the claim is absolute and certain in amount when suit is filed against the receiver; and (3) the claim is made in a timely manner, well before any distribution of the assets of the receivership other than a distribution through a purchase and assumption agreement."  777 F.2d at 1094.  The Fifth Circuit concluded that the attorneys' fees claim in that case was not a "provable" claim against the FDIC as receiver not only because the claim did not exist prior to the bank's insolvency, there was no mention of attorneys' fees in the participation certificates that the creditor bought from the bank, but the "[a]ttorneys' fees were not fixed and certain in amount when the suit was filed against FDIC."  777 F.2d at 1097.  The same is true here.  As opined by the bankruptcy court in *In re Scott*, 157

-48-

B.R. 297, 324 (1993), *opinion withdrawn following settlement*, 162

B.R. 1004 (Bankr. W.D. Tex. 1994),

> As the American Rule requiring each party to bear their own attorneys' fees is only altered in favor of a victorious party, and even then only on occasion, a claim for attorneys' fees against a receiver is a contingent claim not able to be determined expeditiously by a recognized method of calculation. . . . Such a claim can only be determined at the end of a litigation, as expenditures of time and money on a particular litigation differ between attorneys because of skill, intelligence, novelty of issues, cooperation of one's adversary, etc. Therefore, a claim for attorneys' fees is a contingent claim, incalculable at the initiation of the suit, and cannot be awarded against the [receiver]. [citation omitted]

Accordingly the Court finds summary judgment in favor of FDIC is proper on the attorneys' fees issue.

The Court agrees with the FDIC that Plaintiffs fail to establish or even raise a material issue of fact to preclude summary judgment on their wrongful foreclosure claim. The elements of a wrongful foreclosure claim are (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda*, 268 S.W. 3d at 139. Plaintiffs argued that WaMu and FDIC failed to provide the requisite notice and proper publication in periodicals.

The Court disagrees and finds that have Defendants have demonstrated as a matter of law that they did adequately notice Plaintiffs under FIRREA, the Texas Property Code, and the relevant loan documents. On the other hand Plaintiffs have failed to provide

-49-

any evidence to satisfy the last two prongs.

Moreover, the Substitute Trustee's Deed of Trust here as a matter of law is *prima facie* evidence of the validity of the foreclosure sale. *Century Savings*,1994 WL 171463 at *2 ("The substitute trustee's deed recited each of the conditions precedent necessary to establish that the foreclosure complied with the terms of the deed of trust, and, absent of some showing of a specific defect, those recitations are presumed correct."), *citing Houston First Am. Sav. v. Musick*, 650 S.W. 2d at 767; Fed. R. Evid. 902(4).Court agrees. *In accord, e.g., Cockerell v. Republic Mortg. Ins. Co.*, 817 S.W. 2d 106, 112 (Tex. App.--Dallas 1991)(party "raised rebuttable presumptions of default, notice of foreclosure, and bid price at foreclosure by submitting the substitute trustee's deeds"); *Deposit Ins. Bridge Bank, N.A. v. McQueen*, 804 S.W. 2d 264, 266 (Tex. App.--Houston [1st Dist.] 1991)(substitute trustee's deed, which recites compliance with all conditions of the deed of trust, is *prima facie* evidence of the validity of the foreclosure sale); 32A C.J.S. Evidence § 1304 (database updated June 2011). Moreover Plaintiffs have failed to submit any competent summary judgment evidence to rebut this presumption. Thus FDIC is entitled to summary judgment on Plaintiffs' wrongful foreclosure claim.

## V.   JPMC's Motion for Summary Judgment (#21)

Plaintiffs assert that JPMC is jointly and severally liable for all damages related to WaMu's purported wrongful foreclosure because

JPMC purchased the foreclosed Property from FDIC as Receiver on September 25, 2008. JPMC moves for summary judgment on the grounds that Section 2.5 of the Purchase and Assumption Agreement (#21, S.J. Evid. 51 at § 2.5), by which it assumed certain assets and liabilities of WaMu from the FDIC states that it did not assume liabilities on mortgage loans for "borrower claims" related to WaMu's loans or actions: "any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, . . . related in any way to any loan or commitment to lend made by [WaMu] prior to [September 25, 2008], or to any loan made by a third party in connection with a loan which is or was held by [WaMu], or otherwise arising in connection with [WaMu's] lending or loan purchase activities are specifically not assumed by [JPMC]." *See Grealish v. Wash. Mut. Bank, FA*, No. 2:08-CV-763 TS, 2009 WL 2170044, *2 (D. Utah July 20, 2009)(Chase as successor to WaMu was not liable for liabilities related to a loan to plaintiff because the Purchase Agreement expressly stated that Chase did not assume borrower claims "related in any way to any loan."); *Yeomalakis v. FDIC*, 562 F.3d 56, 61 (1st Cir. 2009)(FDIC, not JPMC, was the appropriate party in interest to "borrower claims" regarding WaMu assets acquired by JPMC under an Agreement between JPMC and FDIC stating that FDIC retained "any liability associated with borrower claims"); *Molina v. Wash. Mut. Bank*, 09-CV-00894-IEG, 2010 WL

431439, # (S.D. Cal. Jan. 29, 2010)(same result where Agreement expressly stated that JPMC did not assume liabilities related to borrower claims).

Furthermore, the motion argues that Plaintiffs cannot recover on their claims for wrongful foreclosure as a matter of law. The Court's decision to grant summary judgment in favor of FDIC on Plaintiffs' wrongful foreclosure claim shows that it agrees with JPMC. Plaintiffs failed to show that WaMu did not provide all requisite notices, that the Note was not in default and that the foreclosure sale was improper. On the other hand, FDIC submitted evidence showing that the Note was in default because Plaintiffs failed to make payments after January 2008, that the requisite notices were properly made, and that the foreclosure sale was proper. JPMC insists that Plaintiffs do not and cannot allege that JPMC was involved in any alleged wrongdoing; indeed all of the foreclosure proceedings and WaMu's alleged acts or omissions occurred before JPMC acquired certain assets and liabilities of WaMu on September 25, 2008. JPMC attaches all relevant documents to its motion.

## A.  Plaintiffs' Response (#24)

Plaintiffs make the same arguments that they made to FDIC's motion, which the Court has rejected.

## B.  Court's Decision

The Court agrees with JPMC that the Purchase and Assumption

Agreement demonstrates that JPMC is not the successor to liabilities related to borrower claims, including those of the Clarks, and that Plaintiffs have failed to establish a claim of wrongful foreclosure against WaMu, FDIC, or JPMC.

**ORDER**

Accordingly, for the reasons stated in this opinion and order, the Court ORDERS that

(1) FDIC's motion to strike (#30) is GRANTED;

(2) FDIC's motion to dismiss for lack of subject matter jurisdiction (#20) is DENIED:

(3) FDIC's alternative motion for summary judgment (#20) is GRANTED; and

(4) JPMC's motion for summary judgment (#21) is GRANTED.

**SIGNED** at Houston, Texas, this 6th day of July, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-53-